**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2176-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

I.S.T.,

     Defendant-Appellant.

_____

> Argued May 27, 2026 – Decided July 29, 2026
>
> Before Judges Gilson, Firko, and Vinci.
>
> On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 22-08-0692.
>
> Rachel Glanz, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Rachel Glanz, of counsel and on the briefs).
>
> Meredith L. Balo, Assistant Prosecutor, argued the cause for respondent (William A. Daniel, Union County Prosecutor, attorney; Meredith L. Balo, of counsel and on the briefs).

PER CURIAM

When he was fifteen years old, defendant I.S.T. (Ian) shot and killed a man and injured another juvenile.[1] The resulting charges were waived to adult criminal court and Ian pled guilty to first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1). Thereafter, Ian was sentenced in accordance with a plea agreement to fifteen years in prison subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Ian appeals, challenging his waiver to adult court and his sentence. Having reviewed the record and law, we affirm.

I.

At approximately 1:27 a.m. on June 22, 2021, Elizabeth police officers responded to 447 Elizabeth Avenue on a report of shots fired. In an alleyway between 445 and 447 Elizabeth Avenue, officers found two victims: E.M., Jr. (Eric) and J.C. (Joe), both of whom had been shot. Eric was later pronounced dead at a hospital from a gunshot wound to his neck. Joe was treated for gunshot wounds to his back and arms and recovered.

Through investigations, law enforcement personnel obtained video footage from various surveillance cameras, including a camera that captured the

---

[1] We use initials and a pseudonym because Ian argues he should be treated as a juvenile. See R. 1:38-3. We also use initials and pseudonyms for other juveniles and witnesses.

shootings. The police also identified four suspects: Nasir Sessoms and three juveniles, Ian, J.J. (Jake), and K.E. (Ken).

Jake later gave a statement to detectives explaining the background to the shootings and the shootings themselves. Jake stated that he was with Sessoms on June 21, 2021, when they got "dirty looks" from someone with whom Sessoms had a gang-related "beef." Sessoms told Jake that they were going to "do something" about the person who gave them the dirty look. Sessoms then called Ian, who later joined them and they all went to Ken's house. At Ken's house, they discussed doing something about the dirty looks and shooting "somebody." Sessoms decided Ian should be the shooter and Ken gave Ian a gun.

Sessoms, Ian, Jake, and Ken then rode bikes to Marshall Street, which adjoins Elizabeth Avenue. Ian and Jake went into the Elizabeth Avenue alleyway and Ian fired multiple gunshots at Eric and Joe. Ian and Jake then ran back to where Sessoms and Ken were waiting and they all rode their bikes back to Ken's house, where Ken stashed the gun.

The video footage corroborated Jake's statement. Video footage from 445 Elizabeth Avenue depicted Sessoms, Jake, two girls, and the victims in an alleyway on the afternoon of June 21, 2021. One of the girls later explained that

3

Sessoms and the victims had a confrontation. Later, video footage showed that Eric and Joe were still in the alleyway at approximately 12:29 a.m. on June 22, 2021.

Video footage from other locations depicted Sessoms, Ian, Jake, and Ken riding their bikes from Ken's house on Bond Street at approximately 1:11 a.m. Sessoms and Ken were wearing black sneakers, while Ian and Jake were wearing white sneakers. Shortly thereafter, video footage showed four hooded individuals riding bikes on Marshall Street just before 1:27 a.m. The clothes worn by those individuals, including the black and white sneakers, appeared to be the same clothing worn by Sessoms, Ken, Ian, and Jake in earlier videos.

Video footage from 445 Elizabeth Avenue then depicted two individuals entering the alleyway, approaching the victims, and one of the individuals firing several gunshots at Eric and Joe. The two individuals thereafter ran away and are seen rejoining the other two individuals and all four rode off on bicycles. Ian was later identified by his mother and grandmother as one of the four individuals depicted in the video footage.

In September 2021, Ian was arrested and charged with acts of delinquency, which, if committed by an adult, would constitute murder, conspiracy to commit murder, attempted murder, and weapons offenses. Ian moved to dismiss the

A-2176-23

charges, arguing that the State lacked probable cause. Following a hearing, the family court determined that there was probable cause for the charges and denied the motion.

In November 2021, the State moved to waive jurisdiction to the Law Division so that Ian could be charged and prosecuted as an adult. In support of its motion, the State submitted a written statement of reasons outlining the factors supporting the waiver.

Ian's counsel moved for the release of Ian's records from the Division of Child Protection and Permanency. Following an in-camera review by the family court, certain of those records were turned over to the State and Ian.

Thereafter, Ian retained Dr. Jemour Maddux, a forensic psychologist, who evaluated Ian and wrote a report summarizing his opinions. Ian submitted Dr. Maddux's report as part of his opposition to the State's waiver motion. In response, the State filed a supplemental statement of reasons that addressed Dr. Maddux's report and Ian's mitigating evidence.

On June 20, 2022, the family court conducted a waiver hearing. During that hearing, Ian presented testimony from Dr. Maddux, who opined that Ian was "significantly less mature" than his peers, had a history of emotional and behavioral issues, and would likely have been eligible for special education

5

services due to his emotional regulation impairment. Dr. Maddux also opined that Ian had a low level of criminal sophistication and suffered from oppositional defiance disorder and cannabis use disorder.

In support of its waiver motion, the State argued that Ian had committed serious offenses, including murder. Moreover, the State contended the murder and shooting had been carefully planned and coordinated and the nature of the crimes warranted waiver.

On July 12, 2022, the family court rendered an oral opinion granting the State's waiver motion. The court first found that the State had established probable cause for the offenses charged, including offenses, which if charged as an adult, would include murder and attempted murder. The court also noted that defendant was fifteen years old at the time of the shootings and he was eligible for waiver under N.J.S.A. 2A:4A-26.1(c)(1) and (2).

The family court then addressed the eleven statutory factors set forth in N.J.S.A. 2A:4A-26.1(c)(3). In conducting that review, the court stated "any evidence or information provided in the State's initial [recitation] of the [eleven] factors is the sole consideration" as to whether the State abused its discretion in seeking waiver. The court reviewed the State's initial and supplemental statement of reasons, as well as the mitigating evidence presented by Ian,

A-2176-23

including Dr. Maddux's testimony. After reviewing all the statutory factors, the court concluded that while some factors weighed against waiver, the State's decision was based on a reasoned and qualitative evaluation of all the relevant factors, and the State had not abused its discretion in seeking waiver. Consequently, on July 12, 2022, the court entered an order granting the State's motion to waive jurisdiction to the Law Division, Criminal Part.

In August 2022, a grand jury returned an indictment charging Ian with five crimes: first-degree conspiracy to commit murder, N.J.S.A. 2C:5-2(a)(1) and N.J.S.A. 2C:11-3(a)(1) and (2) (count one); first-degree murder, (count two); first-degree attempted murder, N.J.S.A. 2C:5-1(a)(1) and N.J.S.A. 2C:11-3(a)(1) and (2) (count three); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1) (count four); and second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1) (count five).

The following year, in March 2023, Ian pled guilty to count two, which had been amended to first-degree aggravated manslaughter. In exchange, the State agreed to recommend a sentence of fifteen years in prison subject to NERA and the dismissal of the remaining charges.

On May 19, 2023, Ian was sentenced in accordance with the plea agreement. Ian now appeals from the order granting the State's waiver to adult court. He also appeals from his sentence.

## II.

On appeal, Ian makes two primary arguments, with several related sub-arguments. He articulates his arguments as follows:

POINT I – THE FAMILY PART JUDGE'S DECISION TO GRANT THE STATE'S WAIVER MOTION MUST BE REVERSED BECAUSE THE JUDGE APPLIED THE WRONG LEGAL STANDARD AND THE PROSECUTOR ABUSED HIS DISCRETION IN ASSESSING THE STATUTORY WAIVER FACTORS.

A. The Family Part Judge Erroneously Cabined His Review Of The State's Decision To Seek A Waiver To The Initial Statement Of Reasons, Which Failed To Consider The Mitigating Evidence Contained In Dr. Maddux's Report.

B. The Prosecutor Abused His Discretion In Assessing The Statutory Waiver Factors.

    i. The Prosecutor Abused His Discretion In Finding That Factors (c) ("Degree Of The Juvenile's Culpability") And (f) ("Degree Of Criminal Sophistication") Weighed Heavily In Favor Of Waiver.

    ii. The Prosecutor Abused His Discretion In Finding That Factor (d) ("Age And

8

Maturity Of The Juvenile") Weighed Only Modestly Against Waiver.

iii. The Prosecutor Abused His Discretion In Finding That Factors (e) ("Any Classification That The Juvenile Is Eligible For Special Education") And (j) ("Evidence Of Mental Health Concerns, Substance Abuse, Or Emotional Instability Of The Juvenile") Did Not Weigh Against Waiver.

iv. The Prosecutor's Flawed Analysis of the Statutory Factors Resulted In A Clearly Erroneous Waiver Decision, Such That The Waiver Order Should Be Reversed.

POINT II – THE MATTER SHOULD BE REMANDED FOR RESENTENCING BECAUSE THE COURT WAS MISTAKEN ABOUT THE APPLICABLE SENTENCING RANGE AND FAILED TO PLACE APPROPRIATE WEIGHT ON MITIGATING FACTOR 14.

Following oral argument, we directed the parties to submit supplemental briefs addressing whether the family court used the correct standard and, if not, whether a remand would be appropriate. We also directed the parties to augment the sentencing argument. Ian and the State complied and filed supplemental briefs.

9

I.  The Waiver Decision.

A.  The Standard of Review.

Juveniles who commit acts, which if committed by an adult would constitute a crime, are subject to the Code of Juvenile Justice (Juvenile Code), N.J.S.A. 2A:4A-20 to -48, and their offenses are generally adjudicated in the Chancery Division, Family Part.  N.J.S.A. 2A:4A-23 to -24.  "'The Juvenile Code allows prosecutors[, however,] to seek to proceed in adult court against juveniles who have committed certain serious offenses' through the waiver process set forth in N.J.S.A. 2A:4A-26.1."  State in the Int. of E.S., 252 N.J. 331, 342 (2022) (quoting State in the Int. of N.H., 226 N.J. 242, 248 (2016)).  The prosecutor must establish that "[t]he juvenile was [fifteen] years of age or older at the time of the alleged delinquent act; and . . . [t]here is probable cause to believe that the juvenile committed a delinquent act which if committed by an adult would constitute" one or more enumerated offenses.  N.J.S.A. 2A:4A-26.1(c)(1) to (2).  The enumerated offenses include "criminal homicide."  N.J.S.A. 2A:4A-26.1(c)(2)(A).  "Probable cause signifies that there 'is "a well-grounded suspicion or belief that the juvenile committed the alleged crime."'"  E.S., 252 N.J. at 342 (quoting State in the Int. of A.D., 212 N.J. 200, 205 (2012)).

A-2176-23

"Under the waiver statute, prosecutors have sixty days after receipt of a [juvenile] complaint to move for waiver." Ibid. (citing N.J.S.A. 2A:4A-26.1(a)).

If a juvenile is eligible for waiver under the statute, the prosecutor considers a list of eleven statutory factors to determine whether to seek waiver in a given case. N.J.S.A. 2A:4A-26.1(c)(3)(a) to (k). Those factors are:

> (a) [t]he nature and circumstances of the offense charged;
>
> (b) [w]hether the offense was against a person or property, allocating more weight for crimes against the person;
>
> (c) [d]egree of the juvenile's culpability;
>
> (d) [a]ge and maturity of the juvenile;
>
> (e) [a]ny classification that the juvenile is eligible for special education to the extent this information is provided to the prosecution by the juvenile or by the court;
>
> (f) [d]egree of criminal sophistication exhibited by the juvenile;
>
> (g) [n]ature and extent of any prior history of delinquency of the juvenile and dispositions imposed for those adjudications;
>
> (h) [i]f the juvenile previously served a custodial disposition in a State juvenile facility operated by the Youth Justice Commission, and the response of the juvenile to the programs provided at the facility to the

11

extent this information is provided to the prosecution by the Youth Justice Commission;

(i) [c]urrent or prior involvement of the juvenile with child welfare agencies;

(j) [e]vidence of mental health concerns, substance use disorder, or emotional instability of the juvenile to the extent this information is provided to the prosecution by the juvenile or by the court; and

(k) [i]f there is an identifiable victim, the input of the victim or victim's family.

[Ibid.]

The prosecutor has an "affirmative obligation to show that [he or she] assessed all the [statutory] factors" concerning waiver, and the family court must review that assessment. State in the Int. of Z.S., 464 N.J. Super. 507, 533 (App. Div. 2020) (second alteration in original) (quoting N.H., 226 N.J. at 251); N.J.S.A. 2A:4A-26.1(b). In that regard, the prosecutor must provide a written assessment laying out the facts he or she relied on to evaluate the eleven statutory factors "together with an explanation as to how evaluation of those facts support waiver for each particular juvenile." N.J.S.A. 2A:4A-26.1(a). "The statement of reasons should apply the factors to the individual juvenile and not simply mirror the statutory language in a cursory fashion." N.H., 226 N.J. at 250.

12

"The decision whether to seek waiver vests in the prosecutor."  E.S., 252 N.J. at 342.  "Consequently, the standard of review of the prosecutor's waiver decision is deferential.  The [family] court should uphold the decision unless it is 'clearly convinced that the prosecutor abused his [or her] discretion in considering' the enumerated statutory factors."  Z.S., 464 N.J. Super. at 519-20 (quoting N.J.S.A. 2A:4A-26.1(c)(3)).

At the waiver hearing, the family court reviews the evidence offered by both the State and the juvenile.  N.J.S.A. 2A:4A-26.1(b).  If the prosecutor makes the requisite showing, "the court shall waive jurisdiction of a juvenile delinquency case."  N.J.S.A. 2A:4A-26.1(c).  Nevertheless, "[t]he court may deny a motion by the prosecutor to waive jurisdiction of a juvenile delinquency case if it is clearly convinced that the prosecutor abused his [or her] discretion in considering the [eleven statutory] factors in deciding whether to seek a waiver."  N.J.S.A. 2A:4A-26.1(c)(3).  "Thus, although the court is not bound by a prosecutor's decision to seek waiver, it reviews that decision under the deferential abuse of discretion standard."  E.S., 252 N.J. at 343 (citing N.H., 226 N.J. at 249-51; Z.S., 464 N.J. Super. at 519-20).

The Family Part conducts a review to ensure the prosecutor has made an individualized decision about the juvenile, one that did not abuse the

prosecutor's considerable discretion or was arbitrary. State in the Int. of V.A., 212 N.J. 1, 8 (2012); see also N.H., 226 N.J. at 255. The statute has a presumption in favor of waiver for juveniles who commit serious criminal acts. Z.S., 464 N.J. Super. at 519 (citing State v. R.G.D., 108 N.J. 1, 12 (1987)). The juvenile must overcome a "heavy burden" to defeat a waiver motion. Ibid. (quoting R.G.D., 108 N.J. at 12).

When we review a family court's waiver decision, we consider whether the court applied "the correct legal standard[,] . . . whether inappropriate factors [had] been considered, and whether the exercise of discretion constituted a 'clear error of judgment' [considering] all of the circumstances." State in the Int. of J.F., 446 N.J. Super. 39, 51-52 (App. Div. 2016) (quoting R.G.D., 108 N.J. at 15). Accordingly, we focus on whether the waiver is based on facts grounded in competent credible evidence, whether the correct legal principles were applied, and whether the decision clearly "shocks the judicial conscience." A.D., 212 N.J. at 215 (citing R.G.D., 108 N.J. at 15).

B.     The Family Court's Decision.

There is no dispute that Ian was fifteen years old when he committed the offenses. Thus, he was eligible for waiver.

In making its decision, the family court recognized the importance of the waiver application. In that regard, the court noted several times that a waiver decision is perhaps the most important decision a family court can make. See Z.S., 464 N.J. Super. at 513 (omission in original) (quoting R.G.D., 108 N.J. at 4-5) (explaining "waiver to the adult court is the single most serious act that the juvenile court can perform . . . because once waiver of jurisdiction occurs, the child loses all the protective and rehabilitative possibilities available to the Family Part").

The family court noted it had previously ruled that there was probable cause, but nonetheless it reviewed the evidence again. After considering the evidence, including the video footage and the statement of Jake, the court found that there was probable cause that Ian had conspired to commit murder and had committed the murder and attempted murder. The court also found that there was probable cause supporting the weapons offenses.

Next, the court reviewed the eleven statutory factors the State needed to consider, and the court needed to assess, in determining whether to grant the waiver. See N.J.S.A. 2A:4A-26.1(c)(3)(a) to (k). The court correctly recognized that the standard of review was whether the prosecutor had abused its discretion.

In conducting the review, the court evaluated the prosecutor's statement in support of the waiver motion, Ian's mitigating evidence, including the testimony of Dr. Maddux, and the State's response to Ian's mitigating evidence. After making that comprehensive evaluation, the court determined that while there were some factors weighing against waiver, several key factors weighed in favor of waiver, and the State had not abused its discretion in seeking the waiver. Accordingly, the court granted the waiver.

On appeal, Ian focuses on the family court's standard of review. In that regard, Ian points out that the family court stated several times that the court should evaluate the prosecutor's waiver application based on the initial motion and the information the prosecutor had available at that time. For example, at one point in its analysis, the family court stated: "[T]he court should find that any evidence or information provided in the State's initial [recitation] of the [eleven] factors is the sole consideration as to the issues of abuse of discretion." Ian also points out that in discussing several of the factors, the family court repeated that it was limited to consider what the prosecutor had available when it submitted the initial waiver application.

We agree with Ian that the family court erred in identifying the correct standard of review. The court is not limited to considering the information

16

available to the State or prosecutor at the time of the initial motion. Instead, the court must evaluate whether the prosecutor abused its discretion based on considerations of all relevant materials, including the prosecutor's initial statement, any evidence in mitigation presented by the juvenile, and an evaluation of the State's response to the mitigating evidence. See N.J.S.A. 2A:4A-26.1(b). The evaluation also includes any evidence or testimony presented at the waiver hearing.

While the court did not correctly identify the standard of review, the record establishes that the prosecutor did not abuse his discretion in seeking the waiver. Ian focuses on five factors and contends that the family court erred in evaluating factors (c), (d), (e), (f), and (j). In assessing each of those factors, the court discussed Ian's mitigating evidence, including the testimony and report of Dr. Maddux. Each time the court stated that it was considering what the State had available at its initial application, the court also explained that even if it considered Ian's mitigating evidence, it still found no abuse of discretion by the prosecutor in seeking waiver. The record supports that evaluation and conclusion.

Factor (c) considers the degree of the juvenile's culpability. The State pointed out that Ian conspired with three other participants in planning the

A-2176-23

murders. The State also relies on the fact that Ian was the alleged shooter who fired multiple shots at both the victims. In response, Ian argues that he was under the influence of Sessoms, who was older and acting as the ringleader. The family court acknowledged all those facts and ultimately concluded that the State did not abuse its discretion. In that regard, the court reasoned:

> Nevertheless, after reviewing the evidence provided by the State and the testimony of Dr. Maddux combined with the reasonable inferences drawn from that evidence, the [c]ourt finds that a well-grounded suspicion exists that juvenile defendant has some degree of culpability for the crimes alleged as the actual shooter.

Regarding factor (d)—the age and maturity of the juvenile—the family court again reviewed Ian's mitigating evidence, including Dr. Maddux's testimony that Ian was "significantly less mature" than an average fifteen-year-old. The court expressly stated that even if it considered Dr. Maddux's testimony, it still found "this factor does not weigh against waiver."

The court also engaged in a comprehensive analysis of factor (e)—any classification the juvenile is eligible for special education. Here again, the family court considered Dr. Maddux's testimony that Ian probably was eligible for special education based on his emotional regulatory impairment. The court ultimately found that "this factor does not necessarily weigh against waiver."

A-2176-23

Assessing factor (f)—the degree of criminal sophistication exhibited by the juvenile—the family court again assessed Ian's argument and Dr. Maddux's testimony that Ian had a low degree of criminal sophistication based on the doctor's assessment. The court stated that even if it considered that evidence, the court would find "this factor as it pertains to the juvenile does not weigh against waiver."

Finally, the court assessed factor (j)—the evidence of mental health concerns, substance abuse, and emotional instability of the juvenile. Once again, the court assessed Dr. Maddux's testimony and considered the doctor's diagnosis that Ian suffered from oppositional defiance disorder and "does not regulate his emotion[s] and anger well." The court also considered the doctor's opinion that Ian has a substance abuse disorder. After evaluating that evidence, the court found that factor (j) weighed against waiver. Nevertheless, the court also found that the State had not abused its discretion when considering factor (j) in light of all the other factors.

In summary, our review of the entire record supports the court's determination that the prosecutor did not abuse his discretion in seeking a waiver to the adult criminal court. We note in that regard Ian does not challenge the State's assessment of factors (a), (b), (g), (h), (i), and (k). In assessing those

19

factors, the State placed particular emphasis on factor (a)—the nature and circumstances of the charge; factor (b)—whether the offense was against a person; factor (g)—the nature and extent of any prior history of delinquency; and factor (k)—the input of the victim's family. We discern no abuse of discretion in the family court's findings that all those factors support waiver.

II. The Sentence.

Ian also argues we should remand for resentencing because the trial court identified the incorrect sentencing range and failed to place appropriate weight on mitigating factor fourteen. The record and law do not support a remand.

Appellate courts review sentences under a deferential standard. State v. Cuff, 239 N.J. 321, 347 (2019). Accordingly, we focus our consideration on "whether there is a 'clear showing of abuse of discretion.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Whitaker, 79 N.J. 503, 512 (1979)). Appellate courts should affirm a trial court's sentence unless: "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record;' or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

In sentencing defendant, the trial court considered the aggravating and mitigating factors. In terms of aggravating factors, the court found factor three, "[t]he risk that the defendant will commit another offense," N.J.S.A. 2C:44-1(a)(3), and factor nine, "[t]he need for deterring the defendant and others from violating the law." N.J.S.A. 2C:44-1(a)(9). The court then found mitigating factor thirteen, "[t]he conduct of a youthful defendant was substantially influenced by another person more mature than the defendant." N.J.S.A. 2C:44-1(b)(13). Additionally, the court found mitigating factor fourteen because Ian had been fifteen years old at the time of the shootings and the resulting aggravated manslaughter. Therefore, he was well below the age of twenty-six, which requires consideration of his youth "at the time of the commission of the offense." N.J.S.A. 2C:44-1(b)(14). The sentencing court also found that the aggravating factors substantially outweighed the mitigating factors. All those findings were based on competent credible evidence.

Ian first argues that the trial court applied the wrong sentencing range for his conviction of first-degree aggravated manslaughter. Under N.J.S.A. 2C:11-4(c), a person convicted of first-degree aggravated manslaughter can be sentenced to a term of imprisonment between ten to thirty years. Ian points out, however, that the trial court incorrectly stated that the applicable range was

21

fifteen to thirty years. Accordingly, he argues "[t]he court thus believed that it was imposing the minimum sentence on [Ian], when it actually imposed a sentence five years above the minimum." This argument is not supported by the record.

The court sentenced defendant to fifteen years subject to NERA, consistent with the terms of the negotiated plea agreement. While the trial court misidentified the lower range of the applicable sentencing range, there is no showing that the court was considering imposing a sentence below fifteen years. In that regard, there is nothing in the record to support defendant's assertion that the court thought it was "imposing the minimum sentence," and thus may have given a shorter prison term had it used the correct sentencing range. Indeed, the court found the aggravating factors substantially outweighed the mitigating factors. So, it is highly unlikely the court would have imposed a sentence below the term agreed to in the plea deal. Given this record, Ian has failed to show a clear abuse of discretion. Bolvito, 217 N.J. at 228.

Second, Ian contends that the trial court "gave inadequate weight to mitigating factor [fourteen]." In making this argument, Ian suggests the trial court did not appropriately consider the factors the United States and New Jersey Supreme Courts have required to be considered in sentencing a juvenile to life

22

in prison or its practical equivalent.  See Miller v. Alabama, 567 U.S. 460, 477-79 (2012); State v. Zuber, 227 N.J. 422, 446-47 (2017).

In Miller, the United States Supreme Court declared that when sentencing individuals younger than eighteen, courts must consider five additional sentencing factors focused on the individual's youth.  567 U.S. at 477-79.  In Zuber, the New Jersey Supreme Court adopted the "Miller factors," and distilled them as follows: "[1] defendant's 'immaturity, impetuosity, and failure to appreciate the risks and consequences'; [2] 'family and home environment'; [3] family and peer pressures; [4] 'inability to deal with police officers or prosecutors' or his [or her] own attorney; and [5] 'the possibility of rehabilitation.'"  227 N.J. at 453 (quoting Miller, 567 U.S. at 478).  The New Jersey Supreme Court further held that these factors apply "to sentences that are the practical equivalent of life without parole."  State v. Comer, 249 N.J. 359, 372 (2022) (quoting Zuber, 227 N.J. at 429).

The Miller and Zuber factors did not apply to Ian's sentence because he was sentenced to fifteen years in prison.  In other words, Ian will be released from prison by the time he is thirty years old.  Moreover, he could be released two years before then because he is required to serve only eighty-five percent of

23

fifteen years, that is just over twelve years, before he will be considered for parole.

When a defendant commits an offense when he or she is under twenty-six years of age, the New Jersey Legislature has directed the defendant's age must be considered as a mitigating factor. See N.J.S.A. 2C:44-1(b)(14). Mitigating factor fourteen does not require that it be given a particular weight. Instead, like all mitigating and aggravating factors, the sentencing court should assign an appropriate weight based on the facts of the case. See State v. Rivera, 249 N.J. 285, 298 (2021) (citing State v. Fuentes, 217 N.J. 57, 72-73 (2014)) (explaining a sentencing court must balance the aggravating and mitigating factors "by qualitatively assessing each factor and assigning it appropriate weight given the facts of the case at hand").

As already discussed, the court found and applied mitigating factor fourteen. Ian's argument that the court should have given more weight to mitigating factor fourteen is merely a disagreement with how the court weighed the applicable factors. Ian has pointed to no evidence or facts demonstrating that the trial court abused its discretion in weighing the factors.

In short, having reviewed the sentencing record and the law, we discern no abuse of discretion and no grounds warranting a remand for resentencing. Thus, the sentence is affirmed.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2176-23